The Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| THERESE M. BACKOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEOPLECONNECT, INC., and INTELIUS LLC,<br><br>Defendants. | Case No. 2:21-cv-00115-RAJ<br><br>DEFENDANTS' MOTION TO DISMISS COMPLAINT<br><br>NOTE ON MOTION CALENDAR: APRIL 30, 2021<br><br>ORAL ARGUMENT REQUESTED |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jenner & Block LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................1

BACKGROUND .......................................................................................................2

ARGUMENT ............................................................................................................2

I.    Plaintiff Agreed To Arbitrate Her Claims. ......................................................2

      A.    A Valid Arbitration Agreement Exists Between Plaintiff And Defendants. ...........3

            1.    Intelius Users Are Bound By Its Terms Of Service.................................3

            2.    Plaintiff's Counsel Bound His Client To The Terms Of Service. ...........4

      B.    The Arbitrator Must Decide If This Dispute Is Subject To Arbitration. .................5

II.    The Communications Decency Act Bars Plaintiff's Claim. ...........................6

III.    Plaintiff Has Failed To State A Claim Under ORPS. .........................................8

      A.    Plaintiff Fails To Plead Conduct Within The Territorial Scope Of ORPS. .............8

      B.    Plaintiff Fails To Plead A Prima Facie ORPS Claim. ..............................8

            1.    Plaintiff Fails To Plead "Use" Of Her Persona.........................................9

            2.    Plaintiff Fails To Allege The Use Of Her "Persona."...........................9

                a.    Intelius Did Not Use Protected Aspects Of Plaintiff's Persona..10

                b.    Plaintiff Does Not Allege Her Persona Has Commercial Value. .......................................................................11

      C.    Plaintiff Has Not Pleaded Unlawful Advertising Or Solicitation..........................12

            1.    Intelius's Search Results Have An Informational Purpose....................12

            2.    Referencing A "Monthly Subscription Service" Does Not Plead A Commercial Purpose..........................................................................14

      D.    Plaintiff's Claim Falls Within ORPS's Exemptions.............................................15

            1.    The "Literary Work" Exemption Bars Plaintiff's Claim......................15

             2.    The "Newsworthy Value", "Public Affairs", And "General Public Interest" Exemptions Bar Plaintiff's Claim. ...........................................16

             3.    The First Amendment Exemption Bars Plaintiff's Claim. ....................17

DEFENDANTS' MOTION TO DISMISS – i
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

IV.    Intelius's Alleged Conduct Is Protected By The U.S. Constitution.................................17

    A.    Intelius's Search Results Are Protected Speech Within The First Amendment....18

        1.    Plaintiff's Proposed Restriction On Speech Triggers Strict Scrutiny.....19

        2.    Plaintiff's Claim Is Barred Even If The Speech Was Commercial. .......21

    B.    Applying ORPS To Search Results Violates The Dormant Commerce Clause. ...22

CONCLUSION..................................................................................................................24

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) ...................................................................23

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) .................................................................14

*Am. Beverage Ass'n v. Snyder*,
735 F.3d 362 (6th Cir. 2013) ..............................................................22, 23

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)..................................................................22, 23

*Am. Libraries Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) ...........................................................23

*Aronson v. Dog Eat Dog Films, Inc.*,
738 F. Supp. 2d 1104 (W.D. Wash. 2010)................................................16

*Ballen v. City of Redmond*,
466 F.3d 736 (9th Cir. 2006) ....................................................................22

*Balsley v. LFP, Inc.*,
No. 1:08-CV-491, 2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ............12, 13, 16

*Baugh v. CBS, Inc.*,
828 F. Supp. 745 (N.D. Cal. 1993) ...........................................................16

*Bd. of Trustees of State Univ. of N.Y.. v. Fox*,
492 U.S. 469 (1989)...................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................10

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ........................................................16

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)...............................................................................19, 21

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................................5, 6

*Callahan v. Ancestry.com Inc.*,
No. 20-CV-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .........................7

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ...................................................................6, 8

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980)...........................................................................19, 21, 22

*Cher v. Forum Int'l, Ltd.*,
   692 F.2d 634 (9th Cir. 1982) ...................................................................19, 21

*Clark v. Andover Sec.*,
   44 F. App'x 228 (9th Cir. 2002) ....................................................................4

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .......................................................................4

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975)......................................................................................19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .......................................................................10

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)........................................................................................2

*Dex Media West, Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ..........................................................18, 19, 20

*Dobrowolski v. Intelius, Inc.*,
   No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May, 21 2018) .............13, 14

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ...................................................17

*Esch v. Universal Pictures Co., Inc.*,
   No. 6:09-CV-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)................19

*ETW Corp. v. Jireh Pub., Inc.*,
   332 F.3d 915 (6th Cir. 2003) .............................................12, 16, 18, 22

*Force v. Facebook*,
   934 F.3d 50 (2d Cir. 2019)..........................................................................6, 7

*Fox v. Nationwide Mut. Ins. Co.*,
   117 N.E.3d 121 (Ohio Ct. App. 2018) ..........................................................9

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400,413 (Cal. Ct. App. 2001) ......................................13, 14

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995)........................................................................19

DEFENDANTS' MOTION TO DISMISS – iv
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

*Harbers v. Eddie Bauer, LLC*,
   No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) .................................3, 4

*Harvey v. Sys. Effect, LLC*,
   154 N.E.3d 293 (Ohio Ct. App. 2020) ........................................................................... *passim*

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
   424 F. Supp. 267 (E.D. Va. 1976) ........................................................................................18

*Hoglund v. Meeks*,
   170 P.3d 37 (Wash. Ct. App. 2007) .....................................................................................4, 5

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) .........................................................................................18, 20

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
   No. 18-CV-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ...................................5

*Italian Colors Restaurant v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018) .............................................................................................21

*Jackson v. Playboy Enterprises, Inc.*,
   574 F. Supp. 10 (S.D. Ohio 1983) .....................................................................................9, 11

*James v. Bob Ross Buick, Inc.*,
   855 N.E.2d 119 (Ohio Ct. App. 2006) ..................................................................................10

*Javitch v. Prudential Sec., Inc.*,
   No. 3:02 CV 7072, 2011 WL 251099 (N.D. Ohio Jan. 25, 2011) ...........................................3

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .............................................................................................6, 7

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .............................................................................................7

*Landham v. Lewis Galoob Toys, Inc.*,
   227 F.3d 619 (6th Cir. 2000) .................................................................................................11

*Larson v. Bear*,
   230 P.2d 610 (Wash. 1951) ....................................................................................................4

*Letizia v. Prudential Bache Secs.*,
   802 F.2d 1185 (9th Cir. 1986) ................................................................................................4

*Levin v. Caviar, Inc.*,
   146 F. Supp. 3d 1146 (N.D. Cal. 2015) ...................................................................................3

*Liberi v. Taitz*,
   No. SACV110485AGAJWX, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ...................6, 7

DEFENDANTS' MOTION TO DISMISS – v
2:21-CV-00115-RAJ

*McQuiston v. Marsh*,
   790 F.2d 798 (9th Cir. 1986) ...............................................................................19

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ...............................................................................10

*Mitchell v. Abercrombie & Fitch*,
   No. C2-04-306, 2005 WL 1159412 (S.D. Ohio May 17, 2005)............................8

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (Cal. Ct. App. 1995)...........................................................21

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ...............................................................................3

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ...............................................................................10

*Nieman v. Versuslaw, Inc.*,
   No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) .........................14, 16, 18

*Obado v. Magedson*,
   No. CIV. 13-2382 JAP, 2014 WL 3778261 (D.N.J. July 31, 2014)......................13

*Ostergren v. Cuccinelli*,
   615 F.3d 263 (4th Cir. 2010) ...............................................................................19

*Page v. Something Weird Video*,
   960 F. Supp. 1438 (C.D. Cal. 1996)................................................................19, 21

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)..............................................................................................22

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (Cal. Ct. App. 1997) ..........................................................21

*Powell  v. Sphere Drake Ins., P.L.C.*,
   988 P.2d 12 (Wash. Ct. App. 1999).......................................................................4

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ...............................................................................23

*Ranazzi v. Amazon.com, Inc.*,
   46 N.E.3d 213 (Ohio Ct. App. 2015).....................................................................3

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)..............................................................................................20

*Rent-A-Ctr. W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..................................................................................................5

DEFENDANTS' MOTION TO DISMISS – vi
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

*Roe v. Amazon.com*,
    714 F. App'x 565 (6th Cir. 2017) ...................................................................11, 13

*Romney v. Franciscan Med. Grp.*,
    349 P.3d 32 (Wash. Ct. App. 2015) ...........................................................................4

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ...............................................................................19, 20

*Shanghai Com. Bank Ltd. v. Kung Da Chang*,
    404 P.3d 62 (2017) ......................................................................................................3

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ..............................................................................................18, 20

*Thompson v. Getty Images (U.S.), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ...........................13, 14

*Tompkins v. 23andMe*,
    5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) .....................4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ..............................................................................................20, 22

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
    No. ED CV 16-1953-DMG .........................................................................................4

*Vinci v. Am. Can Co.*,
    591 N.E.2d 793 (Ohio Ct. App. 1990) ...............................................................12, 13

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...............................................................18, 19

*Willan v. Columbia Cnty.*,
    280 F.3d 1160 (7th Cir. 2002) ...........................................................................18, 19

*William O'Neil & Co., Inc. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) ........................................................17, 19, 21

*In re Wyze Data Incident Litgation*,
    No. C20-0282-JCC, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) .....................3

*Young v. Greystar Real Estate Partners, LLC*,
    No. 3:18-CV-2149, 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) .........................10

*Zacchini v. Scripps-Howard Broad. Co.*,
    351 N.E.2d 454 (Ohio 1976) ....................................................................................13

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .....................................................................................7

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes and Rules**

17 U.S.C. § 101 ................................................................................................................15

47 U.S.C. § 230 ........................................................................................................6, 7, 8

Fed. R. Civ. P. 12 .........................................................................................................2, 3

Ohio Rev. Code § 2741.01 ............................................................................... *passim*

Ohio Rev. Code § 2741.02 ............................................................................... *passim*

Ohio Rev. Code § 2741.09 ...............................................................................15, 16, 17

**Restatements**

Restatement (Second) Conflict of Laws ...........................................................................3

Restatement (Third) of Unfair Competition .................................................................12

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1

## **INTRODUCTION**

2   Defendants PeopleConnect, Inc. and Intelius LLC (together "Intelius") operate a website
3   that allows users to search for a person and download a biographical background report that
4   contains public records information such as the person's available phone number(s), property
5   records, places of employment, bankruptcy records, and criminal history. By providing easy online
6   access to searchable, aggregated records about people, Intelius facilitates a wide range of
7   endeavors: from locating lost friends to reviewing property ownership data to locating social media
8   accounts.

9   Plaintiff does not fault Intelius for providing background reports. What she contends is
10   unlawful is Intelius's free search, which  users rely on to determine if Intelius has information
11   about the person being searched. She claims that, because the search results display information
12   about the searched person (such as her name, age, and city), they violate Ohio's Right of Publicity
13   Statute ("ORPS") because they purportedly "advertise" Intelius's services. There are multiple
14   reasons why Plaintiff's theory should be dismissed: (1) Plaintiff agreed to resolve this dispute in
15   arbitration; (2) Section 230 of the Communications Decency Act bars her claim; (3) she cannot
16   plead and has not pleaded an actionable claim under ORPS;  and (4) both the First Amendment
17   and Commerce Clause foreclose her claim.

18   In the end, however, the fundamental defect here is that the right of publicity has nothing
19   to do with Intelius informing users via a search engine whether it can provide a background report
20   about a person being searched. If informing users about the availability of public records
21   information violates ORPS, the implications would all but shut down internet search engines.
22   According to Plaintiff, ORPS is violated anytime an online business allows a user to enter a
23   person's name into a search engine and a website then displays search results showing a product
24   available for purchase related to the queried person. Under this theory, online retailers and
25   marketplaces—like Amazon, eBay, and Etsy, to name a few—violate ORPS every day. There is
26   no indication the Ohio legislature intended to regulate such wide swaths of the modern-day
27   internet, much less make them illegal. This case should be dismissed.

28

DEFENDANTS' MOTION TO DISMISS – 1
2:21-CV-00115-RAJ

## BACKGROUND

Intelius owns and operates www.intelius.com, a website that "sells background reports on people to the general public." Dkt. 1, Complaint ("Compl."), ¶ 1. When a public user "access[es] Intelius's website", they are able to "enter the first and last name of a particular individual via a search bar on the homepage." *Id.* ¶ 3. Once a user "enter[s] this information," the website provides a "listing of search results", each of which "corresponds to an actual person that Intelius has located who matches the name provided by the public user" (hereinafter, "search results"). *Id.* ¶ 4.

Plaintiff alleges that these "search results" provide a "limited, free preview of Defendant's reports" that "includes the searched individual's name (including middle name), age, current city and state of residence . . . relatives, and other identifying information." *Id.* ¶ 5, images one and two. She further alleges users can purchase a background report for the person searched or a membership "subscription" if the user elects to proceed through a series of windows by "[c]licking on" links titled "Open Report," "Agree and Continue," and "Continue," which "leads the users to a pay screen which presents them with an option to pay for Intelius's monthly subscription services." *Id.* ¶ 9; *see also id.* ¶ 5, image three.

Plaintiff claims her "name, age, city of domicile, and the identity of her relatives" appeared in these search results without her consent in violation of ORPS. *Id.* ¶ 22; *see also* ¶¶ 5, 14. In her view, Intelius could legally "sell Plaintiff's information on an individual basis without using her identity to advertise its unlimited subscription service," *id.* ¶ 15, yet, using search results that identify her to "advertise its monthly subscription services whereby a user can access and retrieve reports on any individual in [Intelius's] database" triggers a statutory violation. *Id.* ¶ 8.

## ARGUMENT

### I.   Plaintiff Agreed To Arbitrate Her Claims.

To start, Plaintiff is proceeding in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3). The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). Here, Plaintiff's counsel assented to the Intelius

DEFENDANTS' MOTION TO DISMISS – 2
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

Terms of Service ("TOS"), binding Plaintiff to the arbitration provision therein. Plaintiff's Complaint should thus be dismissed pursuant to Rule 12(b)(3).

### A.   A Valid Arbitration Agreement Exists Between Plaintiff And Defendants.

#### 1.   Intelius Users Are Bound By Its Terms Of Service.

Numerous courts have held that clickwrap agreements—which require a website user to electronically assent to a website's terms of service—constitute valid and enforceable contracts.[1] *See, e.g.*, *In re Wyze Data Incident Litgation,* No. C20-0282-JCC, 2020 WL 6202724, at *2 (W.D. Wash. Oct. 22, 2020); *Levin v. Caviar, Inc.,* 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015). The terms of service need not be displayed on the same page as the button to give the user sufficient notice of those terms. *See Harbers v. Eddie Bauer, LLC,* No. C19-1012JLR, 2019 WL 6130822, at *6 (W.D. Wash. Nov. 19, 2019). In *Harbers,* before the plaintiff could place her order from the defendant's website, she was taken to a screen that stated, just above a "Submit Order" button, "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use." *Id.* The phrase "Terms of Use" was hyperlinked to the full terms. *Id.* The court found that the plaintiff had sufficient notice of the terms of use and granted the defendant's motion to compel arbitration. *Id.*

The same is true here. Before accessing the results of a search on the Intelius website, the user is prompted with the following message: "You may not use our site or the information we provide unless you agree to our Terms of Service." Declaration of Tara McGuane ("McGuane Decl.") ¶ 6.[2] The TOS are hyperlinked directly from that message, and the user must affirmatively select "I AGREE" to perform a search. *Id*. The TOS contain the following arbitration provision in bolded text:

---

[1] Washington law applies here because Defendants are located in Seattle, Washington. *See Shanghai Com. Bank Ltd. v. Kung Da Chang*, 404 P.3d 62, 67 (2017) (applying the Restatement (Second) Conflict of Laws). Further, there is no conflict between Washington and Ohio law on these issues. *See Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 218 (Ohio Ct. App. 2015) (¶ 13 explaining that clickwrap agreements are valid and binding); *Javitch v. Prudential Sec., Inc.*, No. 3:02 CV 7072, 2011 WL 251099, at *8 (N.D. Ohio Jan. 25, 2011) (agents can consent to an arbitration provision on principal's behalf).

[2] Because a motion to compel arbitration is brought pursuant to Rule 12(b)(3), the Court need not accept the pleadings as true and may consider materials outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1
2
3
4
5

**YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT.**

6   McGuane Decl. ¶ 9. Under controlling law, as set forth in *Harbers* and the other cases identified

7   above, that is sufficient to create a valid and enforceable contract to arbitrate.

8          **2.      Plaintiff's Counsel Bound His Client To The Terms Of Service.**

9          Plaintiff's counsel, Julian Diamond of Bursor & Fischer PA, bound Plaintiff to the TOS

10  and the arbitration provision when he assented to the Intelius TOS on her behalf. A lawyer is his

11  client's agent. *Clark v. Andover Sec.*, 44 F. App'x 228, 231 (9th Cir. 2002). Under Washington

12  law, "[a]rbitration agreements may encompass nonsignatories under contract and agency

13  principles." *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 42 (Wash. Ct. App. 2015) (*citing*

14  *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006); *Powell v. Sphere Drake Ins.,*

15  *P.L.C.,* 988 P.2d 12, 14 (Wash. Ct. App. 1999)); *Letizia v. Prudential Bache Secs.*, Inc., 802 F.2d

16  1185, 1187 (9th Cir. 1986) (arbitration agreement enforceable under "ordinary . . . agency

17  principles"); *see also Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. ED CV 16-1953-DMG

18  KKx, 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020) (granting motion to compel arbitration

19  where agent accepted clickwrap agreement). And an agent's authority to "perform certain services

20  on a principal's behalf results in implied authority to perform the usual and necessary acts

21  associated with the authorized services." *Hoglund v. Meeks*, 170 P.3d 37, 44 (Wash. Ct. App.

22  2007) (citing *Larson v. Bear*, 230 P.2d 610, 613 (Wash. 1951)).

23         Diamond ran Intelius searches for "Therese Backowski" on January 14, 2021, and January

24  22, 2021. McGuane Decl. ¶ 12. Diamond could not have undertaken these searches without

25  assenting to the TOS. *Id*. Further, the Complaint includes a screenshot accessible only to a user

26  after accepting the TOS. Compl. ¶ 5, image 3; McGuane Decl. ¶ 13. *See See Tompkins v.23andMe,*

27  Inc., 5:13-CV-05682-LHK, 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d

28  1016 (9th Cir. 2016) (plaintiff's access to portions of website requiring assent to terms of use

constitutes sufficient evidence that plaintiff assented). Diamond's searches, his creation of an account, and the screenshot in the Complaint confirm that Plaintiff's counsel, who was "authorized" to draft and file the Complaint, took the "usual and necessary acts" to do so and thereby bound Plaintiff to the TOS and the arbitration provision therein. *Hoglund*, 170 P.3d at 44.

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-CV-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is instructive. There, Uber moved to compel arbitration on the grounds that the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id.* at *4. The court held that, because the plaintiffs had "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," the plaintiffs were "bound by the arbitration agreement to the same extent as their agent." *Id*.

This case is no different. Instead of accessing Intelius herself, Plaintiff "dispatched" Diamond to "affirmatively test the [Intelius website] in order to bolster her claim[s]." *Id*. So it was through her agent Diamond that Plaintiff gained access to portions of Intelius she would not have been able to view without assenting to the TOS. Plaintiff cannot avoid the arbitration agreement by having her attorney do what she otherwise would have had to do herself. Rather, as in *Uber*, Plaintiff is "bound to the arbitration agreement [in the TOS] to the same extent as their agent." *Id*.[3]

**B.      The Arbitrator Must Decide If This Dispute Is Subject To Arbitration.**

When an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—one that delegates threshold issues of arbitrability to the arbitrator—the FAA requires a court to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–70 & n.1 (2010) (internal quotations omitted). The Ninth Circuit has held that "incorporation of the AAA [American Arbitration Association] rules constitutes 'clear and unmistakable' evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus*

---

[3] If the Court does not grant Defendants' motion, Intelius requests leave to engage in limited discovery regarding (1) Plaintiff's knowledge of and acquiescence to counsel's use of the Intelius website on her behalf and (2) the identity of the person who took the screenshots in the complaint. *Indep. Living Res. Ctr. San Francisco*, No. 18-CV-06503-RS, Order Denying Motion to Compel Abitration and Granting Leave To Seek Limited Discovery 1, ECF No. 35 (N.D. Cal. May 6, 2019) (denying motion to compel arbitration without prejudice and allowing "limited discovery" to "clarify the issue" of whether the app "testers were Plaintiffs' agents").

DEFENDANTS' MOTION TO DISMISS – 5
2:21-CV-00115-RAJ

*Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). That precedent squarely applies here, as the TOS states "[t]he arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), if applicable, as modified by this section." McGuane Decl. ¶ 10.

Even if this Court were to determine arbitrability, the arbitration provision in the TOS plainly applies to Plaintiff's claim, as it encompasses "any and all disputes that have arisen or may arise between [Plaintiff] and PeopleConnect entities." McGuane Decl. ¶ 9.

## II.     The Communications Decency Act Bars Plaintiff's Claim.

At least one court already has held that Section 230 of the Communications Decency Act bars claims against Intelius based on republication of information from other sources. *See Liberi v. Taitz*, No. SACV110485AGAJWX, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011). This Court should do the same. *See also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122, 1125 (9th Cir. 2003) (applying Section 230 to right of publicity claim). Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute bars any claim that would impose liability on "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). That test is met here.

*First*, Intelius, as the owner of a public website, is a "provider … of an interactive computer service." *Id.* ("'[T]oday, the most common interactive computer services are websites.'") (internal quotation omitted).

*Second*, because Plaintiff's claim is premised on Intelius's distribution of content, *see* Compl. ¶¶ 5, 12, 15, 22−28, it seeks to treat Intelius as "a publisher or speaker," *Kimzey*, 836 F.3d at 1268. That is clear from Plaintiff's allegation that Intelius could avoid liability by altering the type and location of content it provides. Compl. ¶ 15. Such decisions are ones publishers make. *See, e.g.*, *Force v. Facebook*, 934 F.3d 50, 66 (2d Cir. 2019) (Facebook is a "publisher" because it chooses where on their site "third-party content should reside and to whom it should be shown"). Because Plaintiff's claim depends on Defendants' dissemination of her information, either by

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

online republication or by sale, it triggers Section 230 immunity. *See, e.g.*, *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 783524, at *5–6 (N.D. Cal. Mar. 1, 2021) (barring, *inter alia*, right of publicity claim under Section 230 because the plaintiffs sought to hold Ancestry liable for displaying information from Plaintiffs' yearbooks and selling copies of those yearbooks); *Liberi*, 2011 WL 13315691, at *11 (Section 230 would bar claims that Intelius, Reed Elsevier, and LexisNexis sold information for credit reports without proper security precautions).

*Third*, Plaintiff's allegations confirm Intelius was a publisher "of information provided by another information content provider." *Kimzey*, 836 F.3d at 1268. Plaintiff's claim is based on the publication of her "identifying information," which she claims Intelius "compiles and generates" from "'multiple data sources'" and "compiles" on its website." Compl. ¶¶ 5, 12, 22. The essence of the claim, therefore, is Intelius's publication "of information provided by another information content provider," which Section 230 bars. *Kimzey*, 836 F.3d at 1268; *see Liberi*, 2011 WL 13315691, at *11. Plaintiff cannot change this by pointing to Intelius's "word-search function," *see* Compl. ¶¶ 3–5, as the provider of content does not change by making information accessible via searches. *Kimzsey*, 836 F.3d at 1270; *see Force*, 934 F.3d at 65–71. Nor does Intelius's use of information in so-called advertisements make a difference, as "disseminating the same content in essentially the same format … does not change the origin of the third-party content." *Kimzey*, 836 F.3d at 1270. What matters is that Intelius did not "provide[], create[], or develop[] any portion of the content that [Plaintiff] alleges harmed" her; it published information "provided by third part[ies]." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014). *See also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331–32 (4th Cir. 1997); *Force*, 934 F.3d at 65.

That Plaintiff seeks to hold Intelius liable for the results of a word-search function only moves her claim further into Section 230's core, as the word search depends on "information provided by" the users themselves. 47 U.S.C. § 230(c)(1). No search results would appear at all without the user providing the name of the person for whom they are searching. And, while Intelius also includes additional third-party content, Plaintiff claims her identity has been misappropriated for profit—which depends on the display of her name, which the users themselves provided.

DEFENDANTS' MOTION TO DISMISS – 7
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

"[R]eviewing courts have treated § 230(c) … as quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). It easily covers Plaintiff's claim here, which seeks to punish Intelius for disseminating information about Plaintiff created and provided to Intelius by others.

## III. Plaintiff Has Failed To State A Claim Under ORPS.

The Complaint also should be dismissed because it fails to state a claim under the Ohio Right of Publicity Statute ("ORPS"). First, Plaintiff fails to plead a violation within the jurisdictional reach of ORPS. Second, the Complaint fails to plead the elements of a *prima facie* ORPS claim. Third, Plaintiff's claim is barred by ORPS's statutory exemptions.

### A. Plaintiff Fails To Plead Conduct Within The Territorial Scope Of ORPS.

Ohio statutes "are presumed not to have an extraterritorial effect unless the legislature clearly manifests a contrary intent." *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412, at *3 (S.D. Ohio May 17, 2005). The legislature did not express that ORPS would have extraterritorial reach. When a statute does not have extraterritorial reach, a plaintiff must plead that the alleged violation occurred in Ohio. *See id.* at *4.

Plaintiff has not done so. She alleges Intelius violated ORPS only by "us[ing]" her identity in search results "on the Intelius website" to advertise Intelius's products. Compl. ¶ 22. The only other mention of Ohio is Plaintiff's allegation that she is an Ohio citizen. *See id.* ¶¶ 16, 40. That is not enough to show that the alleged violation occurred in Ohio. To the contrary, Plaintiff acknowledges that the location and state of incorporation of Intelius (and its parent company, PeopleConnect) do not provide any connection to Ohio. *Id.* ¶¶ 17–18. Given Plaintiff's claim, Intelius only could have "used" her identity in Ohio if it displayed such a search result to a user physically located *in Ohio*. Yet the Complaint contains no such allegation.

### B. Plaintiff Fails To Plead A Prima Facie ORPS Claim.

ORPS provides that "a person shall not use any aspect of an individual's persona for a commercial purpose." Ohio Rev. Code § 2741.02(A). To plead a *prima facie* claim under ORPS, a plaintiff must allege: (1) the "use" of (2) "any aspect of an individual's persona" for (3) "a commercial purpose." *id.*; *see* § 2741.01(B); *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306

1    (Ohio Ct. App. 2020).[4] Plaintiff fails to plead all three elements.

2              1.       **Plaintiff Fails To Plead "Use" Of Her Persona.**

3              To state a claim, Plaintiff must allege that Intelius engaged in a "use" of her identity. Ohio

4    Rev. Code § 2741.02(A). This requires the actual publication of the person's identity. *See, e.g.,*

5    *Jackson v. Playboy Enterprises, Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) (dismissing common

6    law misappropriation of likeness claim because plaintiffs had not "alleged that their names or

7    identities were publicized"); *Fox v. Nationwide Mut. Ins. Co.*, 117 N.E.3d 121, 145 (Ohio Ct. App.

8    2018) (rejecting common law misappropriation of likeness claim for failure to show

9    misappropriation was publicized). Yet the Complaint never alleges that anyone ever conducted a

10   search for Plaintiff, viewed a search result containing her identity, or clicked the "Open Report"

11   button to view the payment screen for her background report. Compl. ¶ 9.

12             All Plaintiff alleges is that she "discovered that Intelius uses her [identity]" on its website.

13   Compl. ¶ 22. But that is not enough. She does not identify *who* allegedly viewed her identity on

14   Intelius's website. And a self-generated, nonpublic "use" of a person's identity is not actionable

15   under ORPS, as nothing in the statute's text or case law suggests that it was intended to apply

16   where the defendant showed the plaintiff her *own* identity *to her or her agents* in response to *an*

17   *inquiry from her or her agents on her behalf.* To the contrary, ORPS's "primary focus is the value

18   of a person's name, vis-à-vis his or her ability to market it for commercial purposes." *Harvey*, 154

19   N.E.3d at 308. Plaintiff's proposed application is far afield from this purpose, and Intelius is not

20   aware of any precedent allowing a claim to proceed under analogous circumstances.

21             2.       **Plaintiff Fails To Allege The Use Of Her "Persona."**

22             Plaintiff fails to allege the use of her persona for two independent reasons: (1) she does not

23   allege the use of any protected aspects of her persona; and (2) she does not allege that such aspects

24   have "commercial value." Ohio Rev. Code § 2741.01(A).

25

26

27   _____
     [4] Because there is "little authority" interpreting ORPS, Ohio courts consider the "entire available body" of right-of-
     publicity case law, including cases on Ohio's common law right of publicity and cases interpreting other states' right

28   of publicity statutes. *Harvey*, 154 N.E.3d at 305, 307.

DEFENDANTS' MOTION TO DISMISS – 9
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

a.        **Intelius Did Not Use Protected Aspects Of Plaintiff's Persona.**

Plaintiff's claim fails because she does not allege a protected use of her "persona" under ORPS. That statute defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id*. Plaintiff claims Intelius's search results identify her "name (including middle name), age, current city and state of residence . . . relatives, and other identifying information." Compl. ¶ 5; *see also id*. ¶ 22. Aside from her name, none of this information falls within the scope of her "persona" under ORPS. And the use of Plaintiff's name is not actionable—Plaintiff concedes Intelius's use of her name complies with Ohio law. *Id*. ¶ 15 (Intelius could "comply[] with state law" by "display[ing] the names of the searched individuals—without more identifying information").[5]

Plaintiff goes on to allege in a conclusory fashion that Intelius used her "likeness[]" for the purpose of advertising its products. *Id*. ¶ 38. But this "conclusory allegation" must be disregarded. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The term "likeness" refers to a visual image of a person's outward appearance. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("The term 'likeness' refers to a visual image . . . ."). Courts have held that, to plead a right of publicity claim based on use of likeness, a plaintiff must show that the likeness is "readily identifiable as the plaintiff in order . . . to prevail." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998).

The Complaint shows that Intelius does not use Plaintiff's "likeness" at all. The screenshots in her Complaint reveal use of only a stock silhouette. Compl. ¶ 5, images two and three. Plaintiff does not, and cannot, claim this stock silhouette is her likeness. And in any event, courts have rejected right of publicity claims even when—unlike here—an actual photograph of the plaintiff is used but some facial features are not discernible. *E.g.*, *Young v. Greystar Real Estate Partners, LLC*, No. 3:18-CV-2149, 2019 WL 4169889, at *4 (S.D. Cal. Sept. 3, 2019) (dismissing right-of-publicity claim where defendant reposted photograph of plaintiff but facial characteristics were

---

[5] Plaintiff's concession is correct, as use of her name alone would not violate ORPS. *See, e.g.*, *Harvey*, 154 N.E.3d at 305 ("The value of the plaintiff's name is not appropriated by mere mention of it . . . ." (quoting *James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 123 (Ohio Ct. App. 2006)).

not discernible and "the photograph could be of any countless number of white males"); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 625–26 (6th Cir. 2000) (dismissing right-of-publicity claim where plaintiff, a fringe movie actor, could not demonstrate that action figure named after his character in movie was synonymous with likeness).

### b.   Plaintiff Does Not Allege Her Persona Has Commercial Value.

Plaintiff also fails to plead that her persona has "commercial value." Ohio Rev. Code § 2741.01(A). To state an ORPS claim, a plaintiff must allege facts showing a "significant commercial value" in associating an item of commerce with her identity. *See Harvey*, 154 N.E.3d at 306 (citation omitted) (quoting *Landham*, 227 F.3d at 624). Absent such a showing, an ORPS claim fails. *See Jackson*, 574 F. Supp. at 13 (dismissing Ohio common law misappropriation of likeness claim for failure to plead likeness had "intrinsic value"); *Harvey*, 154 N.E.3d at 306 (rejecting ORPS claim where plaintiff did not show her name "had significant value or, indeed, any commercial value"); *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (rejecting ORPS claim where plaintiffs failed to show their likeness had commercial value); *Landham*, 227 F.3d at 624 (same, Kentucky common law right of publicity claim).

To determine if a persona has "commercial value," courts consider (1) "the distinctiveness of the identity"; and (2) "the degree of recognition of the person among those receiving the publicity." *Harvey*, 154 N.E.3d at 306. Plaintiff alleges no facts showing that her persona has significant commercial value. She does not allege anything "distinctive[]" about her persona. Nor does she allege she has any "degree of recognition" among the public or other group. *Id.* (plaintiff must have "notoriety which is strong enough to have commercial value within an identifiable group") (internal quotation omitted). Plaintiff alleges only that her persona is "valuable to online advertisers" and that "[c]onsumers regularly pay Defendant for this personally identifiable information." Compl. ¶ 27. But these allegations fail to show that *Plaintiff's* identity was distinct or recognizable. *See Harvey*, 154 N.E.3d at 306; *Landham*, 227 F.3d at 624 (plaintiff "must show that a merchant would gain significant commercial value by associating an article of commerce *with him*") (emphasis added)). At bottom, ORPS is designed to protect persons who are famous within—at the very least—an identifiable group. Plaintiff does not allege that is true of her.

DEFENDANTS' MOTION TO DISMISS – 11
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1

**C.      Plaintiff Has Not Pleaded Unlawful Advertising Or Solicitation.**

2

Plaintiff also has not adequately pleaded that Intelius used her identity for a "commercial

3

purpose." Ohio Rev. Code §§ 2741.02(A), 2741.01(B)(2).

4

**1.      Intelius's Search Results Have An Informational Purpose.**

5

Plaintiff alleges that Intelius used her identity for a commercial purpose by displaying her

6

"name", "age", "current city and state of residence" and "relatives" in a search result generated by

7

an Intelius user looking for a background report. Compl. ¶ 5. The lynchpin to Plaintiff's claim is

8

her assertion that the search result is an "advertisement preview" for an Intelius report or an Intelius

9

"monthly subscription." *Id.* ¶¶ 8, 29. But her allegations in the Complaint fall short because

10

Intelius's search results have an informational, not a commercial, purpose.

11

Content that has an informational purpose cannot be the basis of an Ohio right of publicity

12

claim. As the Sixth Circuit has held, Ohio right of publicity law follows the Restatement (Third)

13

of Unfair Competition, under which "the use of a person's identity primarily for the purpose of

14

communicating information or expressing ideas is not generally actionable," to hold that where

15

the "informational and creative content of the defendant's use" outweighs any "adverse effect" on

16

the market, that use does not constitute a statutory violation. *ETW Corp. v. Jireh Pub., Inc.*, 332

17

F.3d 915, 930, 937 (6th Cir. 2003) (internal quotation marks omitted). Thus, one court has held

18

that even a claim arising from the dissemination of nude photographs by a for-profit website was

19

not for "a commercial purpose" under ORPS because the photographs contained "factual and

20

historical information of Plaintiff's public activities." *Balsley v. LFP, Inc.*, No. 1:08-CV-491, 2010

21

WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010); *see Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794

22

(Ohio Ct. App. 1990) (rejecting right of publicity claim for use of Olympic athletes' names and

23

likenesses on dixie cups because they provided "accurate, historical information").

24

This rule applies with added force where, as here, Intelius did not use Plaintiff's likeness

25

"in a way that would suggest that Plaintiff endorsed or promoted" their products. *Balsley*, 2010

26

WL 11561844, at *9; *see Vinci*, 591 N.E.2d at 794 ("[T]here was no implication that the athletes

27

used, supported, or promoted the product."). Under such circumstances, the use of a person's

28

identity is "incidental," which cannot be the basis of a right of publicity claim. *See Balsley*, 2010

WL 11561844, at *9; *Vinci*, 591 N.E.2d at 794; *Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 458 (Ohio 1976), *overruled on other grounds*, 433 U.S. 562 (1977) (distinguishing the "mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is"); *Roe*, 714 F. App'x at 569 (rejecting ORPS claim based on "incidental" use of plaintiff's images).

Here, Plaintiff's allegations show that that Intelius's search results have a clear informational purpose: in response to a user "search", the "search results" allow a user to determine if Intelius has a background report about the person being searched. Compl. ¶¶ 3–4. The information underlying Plaintiff's claim—her "name", "age", "city and state of residence", and "relatives" (*id.* ¶ 5)—also is informational, in that it is "factual" information about a person. *Balsley*, 2010 WL 11561844, at *9. Absent this information, Intelius would have no way to inform users searching for a background report if Intelius has a report available for that specific person. Moreover, Plaintiff does not and cannot allege that Intelius's search results suggest that she endorses Intelius's products.

Consistent with these principles, courts have found that a website does not use a person's identity for a "commercial purpose" by identifying the person as the subject of the work or online record in response to a user query. *E.g.*, *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May, 21 2018) (dismissing Illinois right of publicity claim against website that displayed plaintiff's likeness to promote sale of background reports because "plaintiffs' identities are not used to promote a separate product"); *Obado v. Magedson*, No. CIV. 13-2382 JAP, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015) (dismissing New Jersey right of publicity against websites that display plaintiff's likeness to promote sale of access to "publicly available materials connected to plaintiff's name"). Put otherwise, right of publicity statutes "prohibit[] the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but does not prohibit using an individual's identity when "a photograph of [the] person" or another work about the person is the very thing the consumer "is considering whether to buy." *Thompson v. Getty Images (U.S.), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (emphasis added); *see Gionfriddo v. Major*

DEFENDANTS' MOTION TO DISMISS – 13
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

*League Baseball*, 94 Cal. App. 4th 400,413 (Cal. Ct. App. 2001) ("Advertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product.") (emphasis in original).[6] Because Plaintiff alleges that Intelius uses her persona only in connection with a product that contains *her* background report, she has failed to plead the "commercial purpose" element. Ohio Rev. Code § 2741.02(A).

### 2. Referencing A "Monthly Subscription Service" Does Not Plead A Commercial Purpose.

Plaintiff's identity was used in a search result only "as part of the product [*i.e.*, the background report] offered for sale," which is not a "commercial purpose." *Dobrowolski*, 2018 WL 11185289, at *3; *see Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (book cover containing plaintiff's photo did not use plaintiff's identity for "commercial purpose" under Florida right of publicity law); *Thompson,* 2013 WL 3321612 at *2; *Gionfriddo*, 914 Cal. App. 4th at 413 (in right of publicity cases, "[a]dvertisements are actionable . . . when the plaintiff's identity is used, without consent, to promote an *unrelated* product"). That Intelius also offers users the "option" of accessing reports on other individuals *in addition* to receiving the report on the individual whose information appeared in the search result does not alter the conclusion that, as in *Dobrowolski*, Plaintiff's identity was not used for a commercial purpose. Compl. ¶ 9.

What is more, Plaintiff does not plausibly plead that Intelius uses her identity to "advertise" a "subscription." *Id.* ¶ 8. Plaintiff repeatedly admits that the "products" Intelius "sells [are] background reports on people." *Id.* ¶¶ 1–2, 22. And the screenshots in the Complaint show that the product offered for sale—and explicitly listed in the "Order Summary" on the "pay screen"—is the individual report for the specific person who was displayed in the search result that the user viewed and selected by pressing "OPEN REPORT." *Id.* ¶ 5, image one; *see id.* ¶ 5, image three. Furthermore, the screenshots in the Complaint refute Plaintiff's conclusory assertion that Intelius

---

[6] *See also Nieman*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (dismissing Illinois right of publicity claim against online search database of court records who displayed plaintiff's name in online search results and "link[ed] to copies of [documents] . . . in Plaintiff's case" which a user could "access[] for a fee" because plaintiff's "name is used only to find documents related to the case").

1    used search results "to advertise" a "subscription." Compl. ¶ 8. Only one of the screenshots in the

2    Complaint references Intelius's "recurring membership" at all. *Id.* ¶ 5 image 3. As this screenshot

3    shows, Intelius does not even affirmatively *offer* a subscription for sale—much less advertise one.

4    The pay screen expressly states that a "recurring membership fee" is charged only if the user

5    declines to cancel within thirty days of purchasing the report on the queried individual. *Id.* ¶ 5,

6    image three. There is no plausible inference that the purpose of Intelius's user-generated search

7    results is to advertise for its opt-out monthly membership.

8         **D.**    **Plaintiff's Claim Falls Within ORPS's Exemptions.**

9           Finally, ORPS exempts various uses of an individual's identity to which the Act does not

10   apply. *See* Ohio Rev. Code § 2741.02(D)(1); § 2741.09(A). "Any one of these grounds would

11   suffice to preclude liability." *Harvey*, 154 N.E.3d at 309. Several of them do here.

12        **1.**    **The "Literary Work" Exemption Bars Plaintiff's Claim.**

13          ORPS does not apply to "[a] literary work, dramatic work, fictional work, historical work,

14   audiovisual work, or musical work regardless of the media in which the work appears or is

15   transmitted" or "an advertisement or commercial announcement" for such a work. Ohio Rev. Code

16   § 2741.09(A)(1)(a), (d). "Literary work" is commonly understood to include works "expressed in

17   words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the

18   material objects," including "books", "periodicals", and "manuscripts." *E.g.*, 17 U.S.C. § 101.

19   Intelius background reports fall within the broad category of "literary work," as they are written

20   documents that provide factual, biographical information to a reader about a particular person. *See*

21   Ohio Rev. Code § 2741.09(A)(1)(a); *see also* Compl. ¶¶ 1, 5–7, 23.

22          To be sure, Plaintiff does not claim the background reports themselves are unlawful—only

23   the search results, which she alleges constitute an "advertisement preview for an Intelius report."

24   Compl. ¶ 29. But even if this depiction of the search results were accurate, though it is not, it would

25   not help her, as ORPS expressly exempts any "advertisement or commercial announcement" for

26   literary works. Ohio Rev. Code § 2741.09(A)(1)(a), (d). So even if Plaintiff were correct in her

27   claim that search results are "advertisements," because the materials they purportedly promote—

28   background reports—are exempt, the search results also would be exempt.

DEFENDANTS' MOTION TO DISMISS – 15
2:21-CV-00115-RAJ

### 2.      The "Newsworthy Value", "Public Affairs", And "General Public Interest" Exemptions Bar Plaintiff's Claim.

ORPS also carves out the (1) "use of an aspect of an individual's persona in connection with any news, public affairs, sports broadcast or account"; (2) "[m]aterial that has political or newsworthy value"; and (3) "use of an aspect of an individual's persona in connection with the broadcast or reporting of an event or topic of general or public interest." Ohio Rev. Code §§ 2741.02(D)(1), 2741.09(A)(1)(b), (A)(3). Any "advertisement or commercial announcement" for material with "political or newsworthy value" is likewise exempted. *Id.* § 2741.09(A)(1)(d). Information and events can be in the "public interest" under ORPS even if they "involve[] the publication of a purely private person's name or likeness." *Balsley*, 2010 WL 11561844, at *10.

Under these exemptions, the "use of a person's identity primarily for the purpose of communicating information . . . is not generally actionable[.]" *See Harvey*, 154 N.E.3d at 308 (quoting *ETW Corp.*, 332 F.3d at 930). Courts in Ohio and elsewhere have held that such exemptions apply to the republication of documents that already have been published— particularly where those documents relate to criminal or legal proceedings. *E.g. Harvey*, 154 N.E.3d at 309 (applying exemption where use of plaintiff's identity involved facts relating to prior legal proceeding that "had been reported in various publications"); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (applying similar exemption to dismiss right of publicity claim against online searchable database of court records because "Plaintiff's prior litigation is a matter of public record and public interest"); *Best v. Berard*, 776 F. Supp. 2d 752, 758–59 (N.D. Ill. 2011) (applying similar exemption to dismiss right of publicity claim against TV show depicting plaintiff's "arrest on criminal charges and facts concerning prior arrests or citations"); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1114 (W.D. Wash. 2010) (reasoning that if purpose of use of plaintiff's likeness is "informative or cultural, the use is immune" from suit under Washington's right of publicity statute); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 754 (N.D. Cal. 1993) (holding that the "appropriate focus is on the use of the likeness itself" such that if plaintiff's "face was used 'in connection' with a news account, then no liability may be found").

DEFENDANTS' MOTION TO DISMISS – 16
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

Intelius's background reports fall within all of these exemptions. As discussed above, these reports are informational and do not propose a commercial transaction. *See Harvey*, 154 N.E.3d at 308. Plaintiff's allegations show that these reports include public information, much of which relates to criminal and legal proceedings, like "Criminal & Traffic Records", "Sex Offender Info", "Govt. Watch List Notice[s]", and "bankruptcy information." Compl. ¶¶ 5, image two, 7. Such documents are newsworthy and relate to "public affairs", Ohio Rev. Code § 2741.02(D)(1). *See Harvey*, 154 N.E.3d at 308.

Plaintiff also alleges that Intelius's search results "advertise" Intelius's reports and "monthly subscription services." Compl. ¶ 8. But Ohio Rev. Code § 2741.09(A)(1)(d) also exempts the alleged advertisements, as any so-called advertisement would be an "advertisement or commercial announcement for" material that has political or newsworthy value. *See William O'Neil & Co., Inc. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1117 (C.D. Cal. 2002) (holding that "news" exception is not restricted to current events, but extends to the "publication of matters in the public interest, which rests on the right of the public to know") (internal quotation omitted); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 543–46 (Cal. Ct. App. 1993) (broadly construing the "news" exception to apply to a documentary that chronicled the lives of public personalities at Malibu in the early days of surfing).

### 3.    The First Amendment Exemption Bars Plaintiff's Claim.

The ORPS also exempts the use of an individual's persona that is "protected by the First Amendment to the United States Constitution as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue." Ohio Rev. Code § 2741.09(A)(6). Plaintiff does not and cannot allege that Intelius's search results "convey or reasonably suggest endorsement" by the Plaintiff. *Id.* And for reasons discussed below, Intelius's use of Plaintiff's persona is protected speech under the First Amendment.

### IV.    Intelius's Alleged Conduct Is Protected By The U.S. Constitution.

Finally, even if Plaintiff could overcome the other failings of her Complaint, it still would not be viable because applying ORPS here violates at least two provisions of the U.S. Constitution.

DEFENDANTS' MOTION TO DISMISS – 17
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

A.    **Intelius's Search Results Are Protected Speech Within The First Amendment.**

The Sixth Circuit has recognized that the reach of ORPS is "fundamentally constrained by the public and constitutional interest in freedom of expression" and that courts applying ORPS must therefore "give substantial weight to the public interest in freedom of expression when balancing it against the personal and proprietary interests recognized by the right of publicity." *ETW Corp.*, 332 F.3d at 930–31. That plainly is called for in this case. "[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Courts in the Ninth Circuit and elsewhere thus have consistently held that the First Amendment protects directories of names, addresses, phone numbers, and other identifying information. *See, e.g.*, *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) (concluding that "the yellow pages directories qualify for full protection under the First Amendment"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (holding that "online database of information" including biographical information protected by First Amendment).[7]

The material Plaintiff seeks to suppress constitutes protected speech. The Complaint alleges that Intelius provides a "listing of search results" in response to a user query in the search engine on Intelius's homepage. Compl. ¶ 4. Those results in turn provide the user with the queried person's "name," "age," "current city and state of residence," and "relatives." *Id.* ¶ 5. This is the sort of factual information the First Amendment protects. *Sorrell*, 564 U.S. at 570. From a constitutional perspective, there is no distinction between Intelius's search results and a yellow pages directory, *Dex*, 696 F.3d at 962, a directory of attorney information, *Vrdolyak*, 206 F. Supp. 3d at 1389, or a physician directory, *Health Sys. Agency of N. Va.*, 424 F. Supp. at 272.

Moreover, the publication of information already in the public domain is particularly sacrosanct. *Nieman*, 512 F. App'x at 638; *see Willan v. Columbia Cnty.*, 280 F.3d 1160, 1163 (7th

---

[7] *E.g.*, *Nieman*, 512 F. App'x at 637–38 (affirming dismissal of right of publicity claim against online search database of court records under First Amendment); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016) (dismissing right of publicity claim based on online directory of attorneys under First Amendment); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272 (E.D. Va. 1976) (publication of physician information, including name, address, and phone number, protected by First Amendment).

DEFENDANTS' MOTION TO DISMISS – 18
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

Cir. 2002). Indeed, it is axiomatic that the First Amendment protects the dissemination of information drawn from public records. *E.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010). Here, the screenshots Plaintiff includes in her Complaint depict the presentation of Plaintiff's name, location, age, and possible relatives. Compl. ¶ 5. That is exactly the type of information that is by its very nature already in the public domain, commonly found in public records. *See Vrdolyak*, 206 F. Supp. 3d at 1386, 1389 (holding that First Amendment precludes IRPA liability for online directory of attorneys with identifying "information gleaned from public records"). So, although, as noted above, the dissemination of truthful, factual information about individuals need not be in the public domain to merit full First Amendment protection, *e.g.*, *Dex*, 696 F.3d at 962, the fact the challenged information here *is* in the public domain makes this case a straightforward one.

The protected nature of Intelius's speech does not vanish because Plaintiff characterizes the search results as "free previews" that "advertise" Intelius's services. Compl. ¶ 8; *see also id.* ¶¶ 7, 15, 23, 29. *E.g.*, *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564–66 (1980). But more fundamentally, even if the search results could be properly characterized as "advertisements," when an advertisement promotes an activity that is "protected by the First Amendment," the advertisement receives the same protection as the underlying activity. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983); *see Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 637–39 (9th Cir. 1982), *abrogated on other grounds as recognized in McQuiston v. Marsh*, 790 F.2d 798, 801 (9th Cir. 1986); *William O'Neil & Co., Inc.*, 202 F. Supp. 2d at 1118–19; *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996).[8] Here, the underlying activity is the preparation and publication of background reports, which is plainly protected speech. *See Cox*, 420 U.S. at 495; *Ostergren*, 615 F.3d at 286.

### 1.   Plaintiff's Proposed Restriction On Speech Triggers Strict Scrutiny.

Plaintiff's proposed application of ORPS to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *See Sarver v. Chartier*, 813 F.3d 891,

---

[8] *Accord Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995); *Esch v. Universal Pictures Co., Inc.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010).

DEFENDANTS' MOTION TO DISMISS – 19
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

903 (9th Cir. 2016) (California's right of publicity law restricts speech based upon its content); *IMDb.com Inc.*, 962 F.3d at 1120 (restriction of dissemination of age information restricts speech based on content). Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see Sorrell*, 564 U.S. at 571 (fact that law is content-based is "all but dispositive"). Here, Plaintiff cannot show that applying ORPS to Intelius's search results serves a compelling state interest, let alone that it is narrowly tailored.

Because Plaintiff cannot overcome strict scrutiny, Plaintiff likely will argue that the search results are subject to the less demanding review associated with regulations of commercial speech. That is incorrect. Commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal quotation omitted). But the Intelius search results do not "propose a commercial transaction" at all. *Id*. Only one of the three screenshots Plaintiff provides mentions a commercial transaction—at most those webpages provide links to other webpages that eventually propose commercial transactions. Compl. ¶ 5, image three. And, in the lone circumstance where a proposal for a commercial transaction appears on the same page as identifying information about Plaintiff, the information appears adjacent to, rather than a part of, the proposal itself. *Id*.

Yet even if the search results did "propose a commercial transaction," by Plaintiff's own account, that is not all that they do. *See Dex*, 696 F.3d at 957 (internal quotation omitted). Plaintiff alleges that these search results convey factual information: specifically a person's "name (including middle name), age, current city and state of residence, the searched individual's relatives, and other identifying information." Compl. ¶ 5. By disseminating this information to anyone who accesses Intelius's website and requests it, the search results identify the persons as to whom Intelius has a background report available—which Plaintiffs cannot dispute does "no more than propose a commercial transaction." *Va. State Bd. of Pharmacy*, 425 U.S. at 762 (internal quotation omitted).

Finally, even if Plaintiff's characterization of Intelius's search results as "advertisements" were correct—though it is not—such advertisements still are constitutionally protected to the same

extent the background reports they advertise are protected. *E.g. Bolger*, 463 U.S. at 66–67 & n.14 ("The mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech," and where the pamphlet advertises speech protected by the First Amendment they should be deemed non-commercial speech.). Plaintiff all but concedes this, acknowledging that Intelius is free to use her information to advertise her background report. Compl. ¶ 15. Courts have consistently held that, if a publication qualifies as constitutionally protected speech, then disseminating portions of it in advertising for the same publication is likewise protected.[9] Plaintiff seeks to end-run this settled principle by alleging that Intelius advertises its "unlimited subscription service" as opposed to her Intelius report. *Id.* ¶ 15. As discussed above, this is refuted by her own factual allegations. But regardless, this superficial distinction goes nowhere. There is ample authority that advertisements for subscriptions to constitutionally protected materials are protected to the same degree as the materials themselves. *E.g. Cher*, 692 F.2d at 637–39; *William O'Neil & Co., Inc.*, 202 F. Supp. 2d at 1119; *Page*, 960 F. Supp. 2d at 1443. Indeed, there is no principled—let alone constitutional—distinction between speech that encapsulates the entire product offered for sale and speech that provides an example of what the product contains.

### 2. Plaintiff's Claim Is Barred Even If The Speech Was Commercial.

If the Court concludes that Intelius's speech is commercial, restrictions imposed by ORPS on that speech still must survive intermediate scrutiny under *Central Hudson*. *See Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018). "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity. If the speech 'is neither misleading nor related to unlawful activity,' then '[t]he state must assert a substantial interest to be achieved by' the regulation. The regulation must directly advance the asserted interest, and must not be 'more extensive than is necessary to serve that interest.'" *Id.* (quoting *Central Hudson*, 447 U.S. at 563–66). "This requires that there be a reasonable fit between the restriction and the goal,

---

[9] *Cher*, 692 F.2d at 637–39; *William O'Neil & Co., Inc.*, 202 F. Supp. 2d at 1119; *Page*, 960 F. Supp. at 1443; *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (Cal. Ct. App. 1997); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (Cal. Ct. App. 1995).

DEFENDANTS' MOTION TO DISMISS – 21
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1    and that the challenged regulation include 'a means narrowly tailored to achieve the desired

2    objective.'" *Ballen v. City of Redmond*, 466 F.3d 736, 742 (9th Cir. 2006) (quoting *Bd. of Trustees*

3    *of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).

4           Plaintiff cannot satisfy this test. First, Plaintiff does not allege that Intelius's speech is

5    "misleading [or] related to unlawful activity", so there is no substantial interest in its regulation.

6    *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that

7    State may not "suppress the dissemination of concededly truthful information about entirely lawful

8    activity"). Second, there is no "reasonable fit" between ORPS's "primary focus"—allowing

9    persons to protect the commercial value of their name, *Harvey*, 154 N.E.3d at 308—and barring

10   Intelius's publication of search results that identify persons included in its background reports. So

11   even under the commercial speech standard, Plaintiff's claim is barred by the First Amendment.

12          **B.     Applying ORPS To Search Results Violates The Dormant Commerce Clause.**

13          State statutes that "burden, but that do not facially discriminate against, interstate

14   commerce" violate the Constitution's Commerce Clause if they impermissibly burden interstate

15   commerce. *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 379 (6th Cir. 2013). Facially neutral

16   statutes that create a disparate impact on interstate commerce are analyzed under *Pike v. Bruce*

17   *Church, Inc.*, 397 U.S. 137 (1970). Under Pike, a facially neutral state law violates the Commerce

18   Clause if "the in-state regulatory benefits of a law outweigh the out-of-state burdens the law places

19   on interstate commerce." *Am. Beverage Ass'n*, 735 F.3d at 379.

20          Here, applying ORPS to Intelius's search results burdens Intelius's ability to engage in

21   interstate commerce in a way that is wholly out of proportion to the *de minimus* state interest in

22   suppressing those results. There is no reasonable connection between the intended aim of ORPS

23   to protect against the false endorsements of products, *ETW Corp.*, 332 F.3d at 924, and a

24   prohibition on Intelius's display of search results to identify persons included in its background

25   reports in response to user-generated queries. So the state interest here is negligible, at best.

26          This negligible interest is far outweighed by the burden on interstate commerce of applying

27   ORPS as Plaintiff proposes. Because of the "boundary-less" nature of the internet, Intelius's

28   business is inherently nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96,

DEFENDANTS' MOTION TO DISMISS – 22
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without project[ing] its legislation into other States.") (internal quotation omitted). Intelius transmits information across state lines through the internet every hour of every day, providing search results to website users located across the country. If ORPS forbids Intelius's search results, as Plaintiff maintains, then Intelius must continually ascertain the precise physical location of each user who views a search result, whether that person is using a tablet, laptop, or smartphone, and then block search results from displaying to users if they are physically located in Ohio. Its only alternative would be to apply the restrictions imposed by ORPS nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope.[10]

Making Intelius choose between excising Ohio from its nationwide transmission of search results—to the extent it is even technologically feasible—or treating ORPS as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would have the effect of "impermissibly regulat[ing] interstate commerce by controlling conduct beyond the State of [Ohio]." *Am. Beverage Ass'n*, 735 F.3d at 376. That is just what the Commerce Clause forbids.

---

[10] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like Intelius. *E.g. Am. Booksellers Found.*, 342 F.3d at 103; *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) ("Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations."); *ACLU v. Johnson*, 194 F.3d 1149, 1161–62 (10th Cir. 1999) ("[T]he nature of the Internet forecloses the argument that a statute [regulating speech over the Internet] applies only to intrastate communications."); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) ("Given the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect.").

DEFENDANTS' MOTION TO DISMISS – 23
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed and Plaintiff compelled to adjudicate her claim in arbitration. In the alternative, the Complaint should be dismissed for the reasons set forth above.

Dated this 5th day of April, 2021.

JENNER & BLOCK LLP

  /s/ Brent Caslin
Brent Caslin, Washington State Bar No. 36145
bcaslin@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, California 90071-2054
Telephone:  213 239-5100

Attorney for Defendants PeopleConnect, Inc. and
Intelius LLC

DEFENDANTS' MOTION TO DISMISS – 24
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on the date given below, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF which sent notification of such filing to the e-mail

4  addresses denoted on the Electronic Mail Notice List.

5      DATED this 5th day of April, 2021.

6                                    /s/ Brent Caslin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
2:21-CV-00115-RAJ

JENNER & BLOCK LLP
633 West 5th Street
Los Angeles, CA 90071
Tel: 213 239-5100